IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KRYSTAL MOSHOLDER, *et al.*, | CASE NO.    5:18CV1325 |
| Plaintiffs, | JUDGE SARA LIOI |
| vs. | |
| LOWE'S COMPANIES, INC., *et al.*, | **DEFENDANT LOWE'S HOME CENTERS, LLC'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

Defendant Lowe's Home Centers, LLC ("Lowe's"), improperly identified in the Complaint as "Lowe's Companies, Inc.", respectfully moves this Honorable Court for Summary Judgment pursuant to Fed. R. Civ. P. 56 as to Plaintiffs Krystal Mosholder ("Krystal") and Daniel Mosholder's ("Daniel") remaining premises liability claim. A memorandum in support is attached hereto.

Respectfully submitted,

/s/ Nicholas P. Resetar
Bradley A. Wright (0047090)
bwright@ralaw.com
Nicholas P. Resetar (0086507)
nresetar@ralaw.com
Roetzel & Andress, LPA
222 South Main Street
Akron, OH  44308
Telephone:  330.376.2700
Facsimile:  330.376.4577
**ATTORNEYS FOR DEFENDANT
LOWE'S HOME CENTERS, LLC**

14519974 _1

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KRYSTAL MOSHOLDER, *et al.*, | CASE NO.   5:18CV1325 |
| Plaintiffs, | JUDGE SARA LIOI |
| vs. | |
| LOWE'S COMPANIES, INC., *et al.*, | **MEMORANDUM IN SUPPORT OF DEFENDANT LOWE'S HOME CENTERS, LLC'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

### I.      INTRODUCTION

Following the Court's Order partially granting Lowe's Motion to Dismiss [Doc #:11], there is only one simple question to answer: Was the dog that allegedly bit Krystal at Lowe's an open and obvious danger? Based upon the undisputed evidence, the answer to that question is also simple, and it is yes. The dog was an open and obvious danger that Krystal fully recognized, appreciated, and understood. In fact, Krystal not only observed the dog prior to the alleged incident, she approached it of her own volition, placed her hand near its mouth, fully comprehending that dogs are unpredictable, and there was a possibility she could be bitten.

Despite these straightforward facts, Krystal claims that Lowe's is responsible for the dog's behavior and that Krystal should be absolved from her own failure to exercise care and protect herself from a dog that she was not only aware of, but a dog she intentionally interacted with. On top of that, Krystal shopped at Lowe's frequently, was aware of Lowe's policy allowing dogs on the premises, and had observed dogs in the store on many occasions. There is no

2

14519974 _1

genuine issue of material fact that the dog which allegedly bit Krystal was indeed an open and obvious condition on the premises. As such, Lowe's is entitled to judgment as a matter of law.

## II. SIMPLE FACTS

On March 15, 2018, Krystal was shopping at the Lowe's store located in Brimfield Township (the "Store"). *See* Krystal Dep. at 8, attached as Exhibit A. Because of her business, Krystal shopped at the Store regularly, making five (5) to six (6) trips per week. *Id*. at 8:16-25.

When Krystal arrived at the Store on this date, she was aware of Lowe's policy that permits customers to bring their dogs into the Store. *Id*. at 9:17-22. In fact, Krystal observed a sticker on the Store's entry doors informing customers that dogs were permitted in the Store and that logically, dogs may be encountered in the Store. *Id*. Moreover, Krystal acknowledges that she observed dogs in the Store prior to March 15, 2018, and in her own words, dogs in the Store were "common." *Id*. at 10:6-13.

Krystal entered the Store, began shopping, and explained the incident as follows:

> A: Okay. Pulled up. I had a handful of materials I needed to buy, some being lumber I'm pretty sure. Then, I needed to get some spray paint and I needed to get some cast iron bars and materials to make something. So I always start at the end where the lumber is. That's where I park. So I parked on the lumber side, go in lumber side, get what I need in the lumber. And then I needed to go down to get the spray paint, which is on the opposite side of the building. I walked – I leave my cart. It already has lumber in it. Then, I walked down to get – I think I got a couple handles, too. Then, I went down to get the spray paint and there was – which I'v3e already seen the dog once in the store on the other side where I was. I went to go – the dog was standing – I mean, if I could draw a picture it would make more sense. But the dog and the owner was standing right by the spray paint, probably enough to fit one other person, maybe two people, to get the spray paint. So I'm walking this way. They're here, right by where I need to go. So the one lady, the employee that you guys just talked to, was bent down, hi, dog, love you, you're so cute, blah,

3

> blah, blah, super excited to see this dog. So I just go around the people this way. As I'm going – I don't even know how to say it because I don't know for sure. But I want to say the dog like turned its head to like say hi to me and then I just literally like tried to like brush the top of its head or nose, or whatever it was, and that's when it lunged at me and got my leg.

*Id*. at 15:9-25, 16:1-17. The dog's owner did not say anything to Krystal, nor did the Lowe's employee, Krystal simply finished her shopping and left, and never informed anyone at the Store that she had been bitten. *Id*. at 17. Krystal described this dog as a "puppy." *Id*. at 19:4-5.

When asked to elaborate on what she observed when she walked into the spray pain aisle, Krystal testified:

> Q   Okay. When you walked into the aisle you saw the employee petting the dog; is that correct?
>
> A:  Yes.

*Id*. at 19:6-9.

\*   \*   \*

> Q:  Okay. Was she like really close to the dog petting him?
>
> A:  Yeah. She was knelt down, from what I can remember, and like petting the head and stuff.

*Id*. at 19:18-22.

\*   \*   \*

> Q:  When you saw the employee petting the dog did the dog appear friendly?
>
> A:  Yes.

*Id*. at 20:4-6.

\*   \*   \*

> Q:  Okay. And you said you put your hand out towards its head?

4

      A:      Just like to touch the nose or whatever. Head, whatever.

*Id*. at 20:11-14.

\* \* \*

      Q:      Okay. And just so I can be very clear, you did see the dog before it bit you?

      A:      Yes.

      Q:      And did you attempt to interact with the dog before it bit you?

      A:      Yes.

      Q:      When you approached the dog did it give you any behavior that you thought – led you to believe it would bite you?

      A:      No.

\* \* \*

      Q:      The dog wasn't hidden from your view? You knew it was there?

      A:      Yep. He was there, yes.

*Id*. at 21:24-25, 22:1-8-24-25, 23:1.

Although Krystal, a dog owner herself, willingly approached this dog, Krystal understood and knew that dogs can be unpredictable, regardless of their appearance:

      Q:      Is it fair to say that dogs you're unfamiliar with can be unpredictable?

      A:      Yes.

*Id*. at 14:1-3.

\* \* \*

      Q:      How do you know that a dog may or may not be vicious, you, prior to approaching it?

5

> A: You have no idea.

*Id*. at 13:19-22.

\* \* \*

> Q: The things we talked about earlier, about a vicious dog, the gnashing the teeth, the barking, trying to get away from its owner, was this dog exhibiting any behavior that you would describe as vicious?
>
> A: No.
>
> Q: With that being said, you told me earlier that dogs are unpredictable, would you chalk this up to being unpredictable, that this dog bit you?
>
> A: Yes.
>
> Q: But you were aware when you walked toward it that it was a possibility you could be bitten, albeit remote?
>
> A: Yes.

*Id*. at 22:9-23. There is no genuine issue of fact that Krystal: (1) knew dogs could be present at the Store; (2) had in fact observed dogs at the Store prior to this incident; (3) observed this particular dog prior to the incident; (4) approached this particular dog; (5) placed her hand near its mouth and head; and (6) had knowledge that dogs are unpredictable and she could be bitten.

The Lowe's employee referenced in Krystal's testimony, Stacie Williams ("Williams"), largely confirms Krystal's testimony except that she did not see or hear the dog attack Krystal. Williams recounted her observations of Krystal as follows:

> Q: Can you describe to me what, if anything, you saw that day that would have been eventful about Mrs. Mosholder's presence at that Lowe's and anything you would have witnessed?
>
> A: I mean, we were both in the spray pain aisle. There was a guy that came in like weekly with his dog and I always had treats in my pocket. So I was giving him a treat. I was

6

> down there and she was messing with the spray paint and picking out a color. She turned around and she stuck her hand out and she said, oh, do you smell my puppies. And the dog kind of like – not nipped, but kind of like played with her. And she pulled her hand away and she goes, must smell mine and she walked away. And that was it.

> \* \* \*

> Q: You did not see the dog bite Mrs. Mosholder?

> A: No.

> Q: Okay. You believe, from what you've stated here, that the only part of Mrs. Mosholder's body that the dog made contact with, that you could see, was her hand?

> A: Correct. Her fingers. Not even really her hand.

> Q: So if she got bit on the upper leg or hip area, you did not see that take place.

> A: Oh, no. No.

*See* Williams Dep. at 21:11-25, 22:1-2., 27:23-25, 28:1-9, attached as Exhibit B.

After Krystal left the Store without notifying anyone of the alleged incident, her husband Daniel called in several hours later to make a report of the incident. *Id*. at 32. At that time, the Store's management discovered that Williams may have witnessed the incident and/or Krystal's interaction with the dog, and asked Williams to make a written statement. *Id*. at 26, 32, Exhibit 1. Williams' entire written statement is below:

> I, Stacie Williams, witnessed a situation that has arose in regards to a dog that was in Lowe's today 03-15-18. I was in aisle 5, with the spray paint, talking to a gentleman with his black and white dog. As I was petting the dog, a lady came into the aisle looking at the spray paint. The dog went to smell the lady, and the owner pulled him back and told the dog "not everyone wants to pet you". She then turned around and put her hand right up to the dogs mouth and said "you probably smell my dog" and was moving her fingers. The dog, in a playing fashion, went to lick her hand and may have nipped her. but not hard enough to do any damage. The

7

14519974 _1

> owner immediately pulled the dog back and the dog came back up to me and started licking me. She didn't say anything and continued shopping. I talked to the owner for a few more minutes and walked away to go to the morning meeting. The same dog and owner are in here weekly. The dog, in my opinion, shows no sign of aggression and tries to greet everyone who walks by. He's always been friendly and happy in all my experiences with him. If you need anything at all, please let me know.

*Id*. at Exhibit 1.

As noted in her statement, Williams set forth that she had interacted with this dog before, and had only known the dog to be "friendly and happy." *Id*. At deposition, Williams testified that she had seen this dog in the store at least five (5) or six (6) times. *Id*. at 22:24-25, 23:1-3. In addition, Williams also testified:

> Q: At any time have you ever seen that dog be angry or aggressive in any way?
>
> A: Not in any way.
>
> Q: You always saw the dog be playful?
>
> A: Yeah. I – I mean, there were kids that would walk up and, can I pet the dog. My kids being one of them, walked up and pet the dog on different occasions.

*Id*. at 23:4-11.

After Daniel reported the alleged incident, Lowe's reviewed its surveillance system to capture all footage of both Krystal and the dog. The still frames below corroborate Williams' testimony concerning the dog's "friendly and happy" behavior:

8



14519974_1



14519974_1



*See* Exhibit A at Exhibit 1.[1]

From all available evidence, it appears that the dog was not vicious, and that Williams' testimony that the dog "happy and friendly." More importantly, there is absolutely no evidence that Lowe's had superior knowledge that this particular dog was vicious or presented a known threat and danger to Krystal.

---

[1] The surveillance video was produced by Lowe's and was included on a USB drive identified in Krystal's deposition as Exhibit 1. Lowe's will provide a copy to the Court for consideration pursuant to Fed. R. Civ. P. 56(c)(1)(a)

11

14519974 _1

### III. THE DOG WAS AN OPEN AND OBVIOUS CONDITION THAT KRYSTAL FULLY APPRECIATED

In order to prevail against Lowe's, Krystal must establish that: (1) Lowe's owed Mary her a duty of care; (2) Lowe's breached its duty of care; and (3) as a direct and proximate result of a breach of this duty, Krystal sustained injury. *See Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 122, 909 N.E.2d 120, 122-123 (2009)(citations omitted). In this case, as Krystal was shopping on the premises, she was considered an invitee, and Lowe's owed her a duty to exercise ordinary care and maintain the premises in a safe condition. *Id*. at 123, 909 N.E.2d 123 (citations omitted).

However, Lowe's duty was not unlimited. Lowe's had no duty to warn Krystal of any open and obvious dangers inside the store. *See Sidle v. Humphrey*, 13 Ohio St.2d 45, syllabus ¶1, 233 N.E.2d 589 (1968). The purpose of the open and obvious doctrine is that premises owners, such as Lowe's, may reasonably expect that persons, such as Krystal, will discover open and obvious hazards and take appropriate measures to protect themselves. *See Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644, 597 N.E.2d 504, 506 (1992). When a plaintiff is injured by an open and obvious hazard, summary judgment is appropriate because a premises owner is relieved of the duty of care, which causes a negligence claim to fail as a matter of law. *See Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, syllabus ¶15, 788 N.E.2d 1088 (2003). The existence of any duty is a question of law for this Court to decide. *See Mussivand v. David*, 544 N.E.2d 265, 270 (1989). The open and obvious doctrine concerns the threshold issue of whether a duty exists at all. *See Hissong v. Miller*, 927 N.E.2d 1161, 1165 (2nd Dist. 2010), *citing Armstrong v. Best Buy Co.*, 788 N.E.2d 1088, 1090-1091 (2003).

"A danger is open and obvious if it is reasonably observable and thus would be seen by someone 'acting with ordinary care under the circumstances'; the plaintiff need not actually have

seen it." See *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 725 (6th Cir. 2012), *citing Hissong*, 927 N.E.2d at 1166. Importantly, "[i]n cases involving an open and obvious danger, '[i]t is only where it is shown that the owner had superior knowledge of the particular danger which caused the injury that liability attached, because in such a case the invitee may not reasonably be expected to protect himself from a risk he cannot fully appreciate.'" See *Smrtka v. Boote*, 88 N.E.3d 465, 470 (9th Dist. 2017).

According to *Smrtka*, a case decided in 2017, dog in and of itself can be an open and obvious condition. *Id*. at 470-471. In *Smrtka*, a patient was bitten at a chiropractic clinic by a dog, which interestingly, was also a patient at the clinic. *Id*. The human patient sued the chiropractor under essentially the same theory utilized by Krystal here: a duty was breached simply by allowing the dog on the premises. *Id*. at 470. The Ninth District Court of Appeals disagreed and held that "the [chiropractor] owed no duty to [the patient] and possessed no superior knowledge regarding a danger on the premises." *Id*. In doing so, the Ninth District reasoned that the patient observed the dog in the clinic, had "heard rumors" about the dog being in the clinic, and as a lifelong dog owner, the patient understood that all dogs "have different personalities, temperaments, and levels of friendliness." *Id*. at 470-471. The Ninth District correctly explained its rationale:

> Mr. Smrtka had knowledge that a dog had been in Dr. Domanick's office on prior occasion. Moreover, Mr. Smrtka saw Luke as he was leaving Dr. Domanick's office and, knowing all dogs react differently, approached Luke. Accordingly, Luke's presence at the chiropractic office was an open and obvious danger to Mr. Smrtka. Whether Luke was properly on the premises does not change that fact. Mr. Smrtka's claims that Dr. Domanick had a duty to keep Luke off the premises are negated by the open and obvious doctrine.
>
> Further, there is no evidence that Dr. Domanick had superior knowledge that Luke presented any danger to others in the office.

13

>Both Mr. Smrtka and Dr. Domanick shared the same knowledge regarding Luke coming to the office on prior occasions and being present on that day.
>
>Additionally, while it was subsequently learned that Luke had previously bitten a person (not at Dr. Domanick's office), Mr. and Mrs. Boote never disclosed that information to Dr. Domanick. While Dr. Domanick had previously treated Luke, he did not have nay knowledge that Luke had any aggressive tendencies. Thereofre, Dr. Domanick had the same level of knowledge regarding Luke's temperament as Mr. Smrtka.
>
>Mr. Smrtka presented no evidence that Dr. Domanick possessed superior knowledge regarding Luke's disposition, propensity to bite people, or any other particular danger posed by Luke. *See Croley v. Moon Ent., Inc.*, 118 Ohio Misc.2d 151, 157, 770 N.E.2d 148 (C.P. 2001)(Although a stutory dog-bite case, the court held the owner was not liable to the business invitee because the owner had no superior knowledge that the dog had ever bitten anyone and was a danger). In the absence of superior knowledge of any particular danger posed by Luke, Dr. Domanick owed no duty to Mr. Smrtka.

*Id*.

Here, *Smrtka* is dispositive of Krystal's claim as the facts and circumstances are virtually identical. Krystal testified to the following key points: (1) she was aware that dogs may be in the Store; (2) she had observed dogs in the Store on prior occasions; (3) she observed this particular dog prior to the incident; and (4) she is a dog owner and understands that dogs have different temperaments, personalities, and can be unpredictable. *See also* Req. for Admis., attached as Exhibit C. Armed with this knowledge, Krystal approached the dog of her own free will, stuck her hand out, and attempted to interact with the dog.

In addition, just like in *Smrtka*, there is no evidence that Lowe's had superior knowledge of any danger posed by the dog. In fact, the complete opposite is true: there is no evidence, aside from Krytal's testimony, that the dog was vicious at all. In fact, according to Lowe's employee Williams, she had observed and interacted with this particular dog on several occasions prior.

14

Williams did not find the dog to be vicious or aggressive, but actually "happy and friendly." Williams' beliefs, as opposed to Krystal's, are borne out by the surveillance footage which captured the dog appropriately interacting with various Lowe's employees. There is nothing present on the video that even remotely demonstrates the dog's aggressive or vicious behavior for Krystal to attempt to impute knowledge upon Lowe's.

The holding in *Smrtka* applies to this case. Krystal has presented no evidence that Lowe's possessed superior knowledge of the dog's disposition, propensity to bite, or any other particular danger posed by the dog. To the contrary, Lowe's has presented evidence that the knowledge possessed by Lowe's employees was that of a friendly dog, without a propensity to bite, which had never posed a danger to customers on its previous visits. For these reasons, Krystal's claim fails as a matter of law because Lowe's owed her no duty to protect Krystal from an open and obvious hazard which Krystal observed, recognized, and interacted with of her own volition. As such, Lowe's Motion for Summary Judgment must be granted.

### IV. KRYSTAL ASSUMED THE RISK OF VOLUNTARILY INTERACTING WITH THE DOG

Primary and secondary assumption of the risk is an available defense in common law dog-bite matters. *See Bowman v. Scott*, 2003 WL 23094923, *4 (Ohio App. 9th Dist. Dec. 31, 2003). Primary assumption of the risk provides that Lowe's had no duty to protect Krystal from certain risks that are so inherent that they cannot be eliminated. *Id*. at n. 4, *citing Anderson v. Ceccardi*, 6 Ohio St.3d 110, 114, 451 N.E.2d 780 (1983). When Krystal approached the dog and stuck her hand near its mouth, there was no possible means for Lowe's to eliminate the inherent risk that Krystal may be bitten. Secondary assumption of the risk applies if Krystal consented or acquiesced to an appreciated, known, or obvious risk to her safety. *Id*. at n. 5, *citing Wever v. Hicks*, 11 Ohio St.2d 230, syllabus ¶ 1, 228 N.E.2d 315 (1967). Krystal admitted and testified

that she understood she could be bitten by approaching an unknown dog, and her act of voluntarily approaching the dog amounted to an assumption of that risk. In this regard and in addition to the open and obvious doctrine, Krystal's claim fails as a matter of law and summary judgment in Lowe's favor is warranted.

## V. DANIEL'S LOSS OF CONSORTIUM FAILS AS A DERIVATIVE CLAIM

Should the Court enter judgment in favor of Lowe's against Krystal's claims, Daniel's claim for loss of consortium fails as a matter of law. *See Bowen v. Kil-Kare, Inc.*, 63 Ohio St.3d 84, 92-93, 585 N.E.2d 384, 392 (1992)("In so holding, we recognize that a claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury."). As such, if Lowe's did not commit a tort upon Krystal, Lowe's is entitled to judgment as a matter of law as to Daniel's claim for loss of consortium.

## VI. CONCLUSION

Based upon the foregoing, Lowe's respectfully requests that the Court grant its Motion for Summary Judgment.

Respectfully submitted,

*/s/ Nicholas P. Resetar*
Bradley A. Wright (0047090)
bwright@ralaw.com
Nicholas P. Resetar (0086507)
nresetar@ralaw.com
Roetzel & Andress, LPA
222 South Main Street
Akron, OH 44308
Telephone: 330.376.2700
Facsimile: 330.376.4577
**ATTORNEYS FOR DEFENDANT LOWE'S HOME CENTERS, LLC**

14519974 _1

## PROOF OF SERVICE

I hereby certify that on this 16th day of December, 2019, the foregoing was served electronically by way of the Clerk's electronic filing system.

>   */s/ Nicholas P. Resetar*
>   Bradley A. Wright
>   Nicholas P. Resetar